**Mary Jo HOOD–O'HARA, Appellee**

v.

**Robert W. WILLS, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.

Filed April 22, 2005.

---

Robert W. Wills, appellant, pro se.

Mary A. Grossman, Doylestown, for appellee.

Before: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 This is an appeal from a Protection from Abuse (PFA) order entered against Robert Wills, appellant, for a period of eighteen months. Finding no merit to the issues raised by appellant, we affirm.

¶ 2 Appellant and Mary Jo Hood–O'Hara (O'Hara) began an eight-year relationship in 1995 while O'Hara was married to her previous husband. Appellant and O'Hara lived together for most of that eight-year period, with the exception of a brief reconciliation between O'Hara and her husband.[1] O'Hara filed a petition under the Protection from Abuse Act[2] on May 21, 2004, and a hearing was held on June 2, 2004. At the hearing, O'Hara testified that appellant engaged in violent and abusive behavior through much of the relationship, including physical assaults and threats against O'Hara and her family. O'Hara moved out of the shared residence in April 2004 and testified that she was continually harassed and threatened by appellant through phone calls made to her workplace.

¶ 3 On appeal, appellant makes several arguments regarding the propriety of the PFA order granted against him. Specifically, appellant claims that: (1) the trial judge abused her discretion in not admitting evidence offered by him in the form of emails purported to be from O'Hara's mother and an audio tape containing a conversation between appellant and O'Hara;[3] (2) the trial judge abused her discretion or committed an error of law in advising O'Hara to seek a custody order; (3) the trial court erred in granting the PFA order where there had been no documented instances of abuse by way of police reports or medical records, instances of claimed abuse occurred as many as eight years ago, and specific dates could not be identified;[4] (4) the trial court erred in failing to recognize the alleged retaliatory nature of the PFA petition; and, (5) the trial court erred in allowing O'Hara to present witnesses when appellant was not provided with notice of their intent to testify.

■ ¶ 4 In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. *Burke ex rel. Burke v. Bauman,* 814 A.2d 206, 208 (Pa.Super.2002).

■ ¶ 5 Appellant's first issues deal with the admissibility of evidence. At the hearing, appellant attempted to offer into evidence emails, purportedly authored by O'Hara's mother and containing references to O'Hara's drinking problem. Appellant claims the exclusion of these emails rendered the hearing incomplete and prejudiced the trial judge's credibility determinations. Additionally, appellant testified as to the existence of an audio-taped conversation illustrating the retaliatory nature of O'Hara's PFA petition.[5]

1. It is during that reconciliation that O'Hara claims she became pregnant with her second child, Logan. Appellant claims to be Logan's father and filed a custody petition on May 10, 2004. The trial court noted that the determination of paternity was not relevant to the protection from abuse issue because O'Hara's petition related solely to her and not to either of her children.

2. 23 Pa.C.S.A. § 6101, *et seq.*

3. We note that for the purposes of discussion, and due to the similarity of the required analysis, we have combined appellant's issues labeled A and B.

4. We note that for the purposes of discussion, and due to the similarity of the required analysis, we have combined appellant's issues labeled C and D.

5. Although appellant was not permitted to admit the audiotape into evidence, he was permitted to testify, without objection from O'Hara's attorney, as to the nature of the conversation, and specifically, O'Hara's alleged comment, "[y]ou think you're going to screw me. Well, I'm going to screw you twice as hard." N.T., 6/02/2004, at 96. It is that comment that appellant argues indicates O'Hara's retaliatory nature.

¶ 6 The trial judge states dual reasons for her exclusion of the emails and we must agree. Under the Rules of Evidence, an out of court statement that is offered for the truth of the matter asserted is excluded as hearsay. Pa.R.E. 801. While there are several exceptions to the hearsay rule, none are applicable here. Because appellant was offering the email, and specifically the portion where the author states, "your drinking bouts are getting worse," as proof of O'Hara's problems with alcohol, they were properly excluded. Additionally, as pointed out by the trial judge, there were authentication problems with regard to the emails. Although testimony revealed that the email address grannyprix@aol.com did in fact belong to O'Hara's mother, Mrs. Hood, it was denied by Mrs. Hood that she was the author of the emails.[6] N.T., 06/02/2004, at 54–55. We find that the emails were properly excluded.

¶.7 As for the audiotape, the trial judge found, and we agree, that the substance of the tape dealt primarily with the issue of paternity. See id. at 75–77. In fact, only the statement, "I'll screw you twice as hard," could even possibly relate to this proceeding, and the trial judge was within her discretion in discrediting the implication the appellant wished her to draw. Id.

¶ 8 Appellant next argues that the trial judge improperly advised O'Hara to seek a custody order. We find that this argument is entirely without merit. The judge's comment, complained of by appellant, consisted of the following:

The Court: Oh, I'll tell you, they've been living together, so if right now he would agree to child support, maybe she'd rethink the issue if it were certain. But we're leaving the paternity issue to the custody court.

Id. at 87.

¶ 9 We agree with the trial court that this was not "advice" regarding the custody issue, nor was any order issued with regard to custody. Additionally, according to testimony, O'Hara was disputing appellant's paternity of her son, appellant had already filed a custody action, and a hearing had been scheduled.

¶ 10 Next, appellant argues that the judge erred in granting the PFA order because the evidence presented was insufficient. "When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner, and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." Ferri v. Ferri, 854 A.2d 600, 602 (Pa.Super.2004). In these matters, this Court "defers to the credibility determinations of the trial court as to witnesses who appeared before it." Raker v. Raker, 847 A.2d 720, 724 (Pa.Super.2004).

¶ 11 The Protection from Abuse Act is designed "to bring about a cessation of abuse of the plaintiff." 23 Pa.C.S.A. § 6108. It defines "abuse" as "(i) intentionally, knowingly, or recklessly causing bodily injury; [or] (ii) placing another in reasonable fear of imminent bodily injury" Id. at § 6102. O'Hara testified that appellant hit her on several occasions, the most

---

6. Mrs. Hood testified that she had problems in the past with her email account and had to, on at least one occasion, change her password. N.T., 6/02/2004, at 55–56. Although the trial judge may have improperly interjected that she had been told it was possible to "fake" an email and have it look as if someone else had sent it, we agree with the trial judge that the emails were not properly authenticated. Id. at 74.

recent being Easter of 2004. N.T., 06/02/2004, at 7–22. Both O'Hara and her mother testified to the existence of bruises and/or other indications of abuse on O'Hara's body. *Id.* at 8, 10, 13, 42, 43, 46. O'Hara also testified that appellant repeatedly threatened both her and her family and that the threats continued after she moved out of the residence. *Id.* at 17, 19, 27. O'Hara further testified that she had male co-workers escort her to her car due to fear of appellant, who worked close by. *Id.* at 34–35. We have previously held that it is possible for a person to be placed in reasonable fear of imminent bodily injury based on telephone calls, when the calls are coupled with the alleged abuser's past history of violence. *Burke*, 814 A.2d at 209. Finally, the trial judge found the testimony of both O'Hara and her mother to be credible. Trial Court Opinion, at 3. We find, when viewing the evidence in the light most favorable to O'Hara, as the petitioner, there was sufficient evidence to prove abuse and that the trial judge did not err in so finding.

¶ 12 Appellant's argument that the lack of police reports or medical records renders the judge's determination erroneous also fails. The trial judge heard the testimony from both parties and found O'Hara to be more credible. *Id.* Nowhere in the Protection from Abuse Act itself, or in the body of case law interpreting it, is there a requirement that a police report be filed or that there be medical evidence of an injury in order to sustain the burden of proof. A petitioner simply must show by a preponderance of evidence that she suffered abuse as defined by the statute. *See Coda v. Coda*, 446 Pa.Super. 296, 666 A.2d 741 (1995) (holding testimony of petitioner was sufficient).

¶ 13 Likewise, appellant's argument that the judge improperly considered the testimony relating to incidents occurring near-ly eight years ago, where no charges were filed, fails. Appellant states that no specific dates could be testified to by O'Hara and that because O'Hara and appellant had been separated for a period of approximately six weeks, no credible abuse occurred. Appellant is wrong on all accounts. Initially, as stated above, the Protection from Abuse Act does not require police reports or formal charges to have been filed for an incident to be considered abuse. Secondly, O'Hara testified to at least two specific dates, Christmas of 2002 and Easter of 2004, and was able to approximate other occasions based on family functions and tax filings. N.T., 6/02/2004, at 8–9, 12–13, 15, 18, 20–22. Furthermore, this Court has previously held that the Protection from Abuse Act requires flexibility in the admission of evidence and that prior instances of abuse are relevant and admissible. *Miller v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252 (1995). Lastly, the Protection from Abuse Act specifically states that "the right of [appellee] to relief … shall not be affected by [appellee] leaving the residence or household to avoid further abuse." 23 Pa. C.S.A. § 6103.

¶ 14 Appellant next argues that the trial court erred in not recognizing the retaliatory nature of O'Hara's petition, specifically, that because the PFA petition was filed one day after O'Hara was officially served with appellant's custody suit, the PFA petition was an attempt to "get back" at appellant. The trial judge heard testimony regarding the dates the respective petitions were filed and served. N.T., 6/02/2004, at 32–34, 66, 82. She determined that O'Hara credibly testified that she did not file the petition in response to appellant's custody suit, and in fact, had attempted to file it before being served with the custody papers but was precluded from doing so by inopportune timing and

car trouble. N.T., 6/02/2004, at 33–34. We will not overturn the credibility determination of the judge. Thus, appellant's argument fails.

 ¶ 15 Appellant's final argument is that he was denied a proper hearing because he was not notified of O'Hara's intention to call witnesses. We find this a peculiar argument and reject it for numerous reasons. First, at the time of the hearing, no objection was made to the testimony of Mrs. Hood, the mother of O'Hara. It is axiomatic that an issue not raised in the trial court cannot be raised for the first time on appeal. Second, appellant cites no statutory or case law, nor can we find any, to support his contention that he is entitled to a witness list or notice of intention to call witnesses. To the contrary, Pa.R.C.P.1930.5(a) clearly states that there is no discovery in protection from abuse proceedings unless authorized by a court order.

¶ 16 Finding no merit to appellant's arguments, we affirm the order of the trial court.

¶ 17 ORDER AFFIRMED.