J-S78031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KRISTINE A. HOPKINS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RENEE M. HOPKINS, | : | |
| | : | |
| Appellant | : | No. 126 MDA 2014 |

Appeal from the Order entered on December 17, 2013
in the Court of Common Pleas of Centre County,
Civil Division, No. 2476-2013

BEFORE:  GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED JANUARY 13, 2015**

Renee M. Hopkins ("Renee") appeals from the Order granting the Petition for Protection from Abuse (hereinafter "PFA Petition") filed by Kristine A. Hopkins ("Kristine").  We affirm.

Renee and Kristine are sisters, who have had a troubled relationship for many years.  Renee lives in Erie County with her son, Matthew.  Kristine resides in Centre County.  Prior to the death of their father, Bruce Hopkins ("Mr. Hopkins"), in early June 2013, Renee was his sole caregiver.  Shortly before his death, an incident occurred wherein Matthew threw a beer bottle at Mr. Hopkins, causing a laceration on his cheek.  When Kristine learned of the incident, she traveled to Erie County and convinced her father to report the incident to police, who charged Matthew with one count of simple assault.  Although Matthew was found not guilty of the assault charge, he

consented to the entry of two PFA Orders: one in Centre County protecting Kristine; and another in Erie County protecting Mr. Hopkins.

On June 12, 2013, following Mr. Hopkins's death, an altercation occurred between the sisters at the funeral home in Erie County, requiring the intervention of the funeral home director and the dispatch of local police. Each sister contended that the other was the aggressor. Thereafter, Renee petitioned the court in Erie County for a PFA order against Kristine, and Kristine petitioned the court in Centre County for a PFA order against Renee. Both Petitions were granted on a temporary basis. In Erie County, a final Order was entered on June 27, 2013, granting Renee's PFA Petition against Kristine for a period of three years.

Meanwhile, in Centre County, Renee twice unsuccessfully moved to dismiss Kristine's PFA Petition, first via a written Motion and later via an oral Motion. Thereafter, a final Order was entered on December 17, 2013, granting Kristine's PFA Petition against Renee for a period of three years.[1] Renee filed a timely Notice of appeal and a court-ordered Statement of Matters Complained of on Appeal.

On appeal, Renee raises the following issues for our review:

1. Whether the trial court erred when it denied [Renee's] written Motion to Dismiss on September 26, 2013[,] for the reasons stated[,] when the defenses and/or theories of coordinate

---

[1] The PFA Order entered against Renee also protects two other individuals: Cheryl Campbell ("Campbell") and Holly Schwab ("Schwab"), who are cousins of Renee and Kristine.

jurisdiction, *res judicata*, collateral estoppel and/or subject matter jurisdiction apply in the instant case?

2. Whether the trial court erred when it denied [Renee's] oral Motion to Dismiss on October 13, 2013[,] for the reasons stated[,] when the defenses and/or theories raised under the Protection From Abuse Act ["PFA Act"[2]] apply in the instant case?

3. Whether the trial court erred when it granted [Kristine's PFA] Petition on December 17, 2013[,] despite a lack of evidence to support said ruling and/or the preponderance of the evidence burden of proof, especially because [Kristine] admitted to causing the situation that precipitated the entire events of June 12, 2013?

4. Whether the trial court erred when it granted [Kristine's PFA] Petition on December 17, 2013[,] for a period exceeding the statutory limit of three (3) years[,] and included two (2) additional individuals as protected persons?

Brief for Appellant at 3 (footnote added).

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014).

In her first issue, Renee contends that the PFA Petitions were identical with respect to the parties, the witnesses, the issues, and/or the sequence of

---

[2] ***See*** 23 Pa.C.S.A. § 6101 *et seq*.

events. Brief for Appellant at 13-14.[3] Renee claims that, when comparing the transcripts of the two PFA proceedings, Kristine cannot point to any factor that changed, and characterizes the Centre County PFA proceedings as a "mirage" of the Erie County PFA proceedings. *Id*. at 14. Renee points out that Kristine had a full and complete opportunity to litigate the Erie County PFA, which she did by hiring counsel and presenting five witnesses. *Id*. On this basis, Renee claims, the theories of *res judicata*, collateral estoppel, coordinate jurisdiction and subject matter jurisdiction should apply, in varying degrees, to this case. *Id*. Renee contends that the trial court erred in entertaining Kristine's PFA Petition because the facts, issues, credibility of witnesses, and sequence of events were already determined by the trial court in Erie County. *Id*. at 13.

Renee also compares Kristine's PFA Petition to a lawsuit, and asserts her belief that, like a lawsuit, a PFA petition "must be subject to the rigors of any legal defenses and/or objections and/or theories raised as a consequence." *Id*. Renee claims that the trial court either erred by failing to consider her defenses and objections to Kristine's PFA Petition, or by

---

[3] We note, with disapproval, that Renee seeks to incorporate by reference into her appellate brief the contents of numerous documents, briefs and transcripts filed in the trial court. Brief for Appellant at 13, 16, 18, 20. A party cannot incorporate the contents of another document into her brief on appeal, and must *fully* develop her position in her appellate brief addressed to this Court. *See Commonwealth v. Rodgers,* 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that an appellate brief is not an appropriate vehicle for the incorporation by reference of matter appearing in previously filed legal documents).

making "a clearly erroneous decision based on the overwhelming evidence that [Kristine] was forum shopping." *Id*. at 14. Renee contends that Kristine refused to accept the determination of the Erie County trial court, and instead of using Erie County as the forum in which to pursue her PFA Petition, she chose Centre County as the forum, thereby requiring all the previous witnesses to travel to Centre County. *Id*. Renee asserts that the trial court erred by denying her written Motion to Dismiss, which raised these issues. *Id*. at 14-15.

In its September 26, 2013 Opinion, the trial court set forth the relevant law, addressed Renee's first issue, and determined that it lacks merit. *See* Trial Court Opinion, 9/26/13, at 1-2. We agree with the sound reasoning of the trial court and affirm on this basis as to Renee's first issue. *See id*.

In her second issue, Renee contends that the trial court erred by determining that the PFA Act applies to her and Kristine. Brief for Appellant at 16. Renee points out that she and Kristine do not live in the same household or work in the same office, but, rather, live three hours apart and infrequently see each other. *Id*. Renee asserts that the PFA Act "was created to stop and/or deter domestic abuse, especially for individuals in an intimate and/or sexual relationship and/or individuals living in the same household." *Id*. Renee compares the Centre County PFA Order to a general restraining order, and claims that the PFA Act was not created to provide

such a general restraining order. *Id*. For these reasons, Renee contends that the trial court erred by denying her oral Motion to Dismiss. *Id*.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the relevant law, addressed Renee's second issue, and determined that it lacks merit. *See* Trial Court Opinion, 3/5/14, at 2-3. We agree with the sound reasoning of the trial court and affirm on this basis as to Renee's second issue. *See id*.

In her third issue, Renee contends that the trial court erred by granting Kristine's PFA Petition for the following reasons: (1) Kristine admitted that she initiated physical contact with Renee at the funeral home to protect the corpse of Mr. Hopkins, and not out of fear of her safety; (2) Kristine's "strongest" witnesses were her cousins, Schwab and Campbell, whose testimony contradicted Kristine's testimony, and changed from the Erie County PFA proceedings to the Centre County PFA proceedings; (3) Kristine is/was a law enforcement officer with seventeen (17) years of experience with accompanying training for handling firearms, self-defense techniques and lived 24-7 with an assigned K-9 unit;[4] (4) Kristine's past incidents of reported "abuse," include a car driving by her house on one occasion, and seeing Renee at a Penn State Football game when Kristine was in full police uniform with full protective gear; (5) Kristine was motivated to deceive the trial court because she feared losing her employment; (6)

---

[4] Kristine was employed as a Pennsylvania State University ("Penn State") police officer in the K-9 unit.

Kristine had an intense feud with Matthew due to the beer bottle incident; and (7) Kristine was motivated to deceive the trial court "to 'avenge' the perverted notion that Matthew, and by extension Renee, killed Mr. Hopkins through the not 'guilty verdict[,]' as his health steadily declined after the aforementioned verdict." Brief for Appellant at 18-19. Renee claims that the Erie County trial court has already determined that the facts do not favor Kristine, and that the evidence was not credible or sufficient to grant the relief requested by Kristine. *Id*. at 19. Renee asserts that, by filing her PFA in Centre County, Kristine was forum shopping, and that she only filed the instant PFA in response to the PFA that Renee filed in Erie County. *Id*.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the relevant law, addressed Renee's third issue, and determined that it lacks merit. *See* Trial Court Opinion, 3/5/14, at 3-4. We agree with the sound reasoning of the trial court and affirm on this basis as to Renee's third issue. *See id*.

In her fourth issue, Renee contends that, when factoring in the duration of the PFA granted on a temporary basis, the trial court erred when it granted a PFA Petition that exceeded three years. Brief for Appellant at 20. Renee asserts that the PFA against her should only extend for three years from the date on which the temporary PFA against her was granted. *Id*. Additionally, Renee claims that the trial court erred by including Schwab and Campbell as protected persons in the PFA Order. *Id*. Renee asserts

that these individuals live three hours away from Kristine, and have no guardianship relationship with her. *Id*.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the relevant law, addressed Renee's fourth issue, and determined that it lacks merit. *See* Trial Court Opinion, 3/5/14, at 4-5. We agree with the sound reasoning of the trial court and affirm on this basis as to Renee's fourth issue. *See id*.

Because our review of the evidence, when considered in the light most favorable to Kristine, supports the trial court's determination by a preponderance of the evidence, and because we discern no error of law or abuse of discretion, we affirm the trial court's final Order granting Kristine's PFA Petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015



# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

KRISTINE HOPKINS,  :
        Plaintiff,  :
          :
        v.  :    No. 2013-2476
          :
RENEE HOPKINS,  :
        Defendants.  :

*Attorney for Plaintiff:*               *Douglas L. Hearn, Esquire*
*Attorney for Defendant:*           *Jason A. Checque, Esquire*

## OPINION AND ORDER

**KISTLER, J.**

Defendant filed a Motion to Dismiss Plaintiff's Protection from Abuse ("PFA") Petition on August 28, 2013. Defendant argues that Plaintiff's PFA should be dismissed pursuant to the doctrines of coordinate jurisdiction and res judicata and/or collateral estoppel. Under the "coordinate jurisdiction rule," judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *See Commonwealth v. Starr*, 664 A.2d 1326 (Pa. 1995). The Court believes the doctrine of coordinate jurisdiction does not apply, as the instant matter and the previous PFA that was granted in favor of Defendant and against the Plaintiff in Erie County are not the "same case," nor do we believe the instant case was "previously litigated" in Erie County. While both PFAs may be concerning the same incident, the determination that must be made by the court—whether Plaintiff is justifiably in fear of Defendant and requires protection therefrom—is a new issue that must be addressed by this Court. The Court does not find the decision in the PFA action in Erie County is dispositive of the case sub judice. The Plaintiff did not have a full and fair opportunity to

☒O ☐RD ☐S

litigate her claims in the Erie County proceeding as Defendant suggests. Section 6108(c) of the Protection From Abuse Act specifically provides that a mutual order shall not be issued unless both parties timely file written petitions. 23 Pa.C.S.A. § 6108(c). As Plaintiff did not file her petition in Erie County, that court was not free to decide whether she was justifiably in fear of the Defendant. *See McKelvey v. McKelvey*, 771 A.2d 63, 64 (Pa. Super. Ct. 2001) (holding that a court may not *sua sponte* issue a mutual order for protection from abuse when one party has not filed a petition under the PFA Act). Additionally, Plaintiff was not required to file her petition in Erie County as Rule 1901.1(a)(1) of the Pennsylvania Rules of Civil Procedure (relating to actions pursuant to the Protection From Abuse Act), states that a plaintiff may file a PFA in the county in which she resides. Pa.R.C.P. No. 1901.1. As such, Defendant's Motion to Dismiss Plaintiff's Protection from Abuse Petition filed on August 28, 2013, is hereby DENIED.

## ORDER

AND NOW, this 26 day of September, 2013, Defendant's Motion to Dismiss Plaintiff's Protection from Abuse Petition is hereby **DENIED.**

BY THE COURT:

Thomas King Kistler, President Judge

2

October 24 2014 11:26 AM

J-78031-14

# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

KRISTINE A. HOPKINS,
      Plaintiff,

    v.

RENEE M. HOPKINS,
      Defendant.

: : : : : : : : :

No. 2013-2476

*Attorney for Plaintiff:*                     *Douglas L. Hearn, Esquire*
*Attorney for Defendant:*                 *Jason A. Checque, Esquire*

## OPINION IN RESPONSE TO MATTERS COMPLAINED OF ON APPEAL

**KISTLER, J.**

Defendant, Renee Hopkins, filed an appeal on January 16, 2014 of this Court's Final Protection from Abuse Order entered on December 17, 2013. On February 12, 2014, Defendant filed a Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Defendant raises four matters complained of on appeal and upon review of Defendant's Statement, the Court respectfully submits, pursuant to Pa.R.A.P. 1925(a), that this Court's Protection from Abuse Order of December 17, 2013 was correctly entered, the reasons for which were adequately addressed therein. However, this court will briefly address each matter complained of in turn below.

### (1) This Court's Order and Opinion of September 26, 2013.

Defendant contends the Court erred in denying her Motion to Dismiss in its Opinion and Order of September 26, 2013, in which Defendant raised issues of coordinate jurisdiction, res judicata, collateral estoppel, and subject matter jurisdiction as defenses to Plaintiff's Protection from Abuse Petition. The Court believes this issue was fully addressed in our Opinion and Order of September 26, 2013 and will rely on the same.

☒O ☐RD ☐S

(23)

## (2) The parties are not "Protected Individuals" under the Protection from Abuse Act.

Defendant believes it was error for this Court to deny her oral motion to dismiss on October 16, 2013, because the parties do not fit within the definitions of a protected individual(s) as defined for Plaintiff and/or Defendant under the Protection from Abuse Act, 23 Pa.C.S.A. §6101 et seq. This Court denied the oral motion because we are unaware of any "household requirement, duration or recent date of co-habitation requirement, or a proximity/mileage" requirement, as alleged by Defendant. As a general matter, the PFA Act defines "abuse" as follows:

> The occurrence of one or more of the following acts *between family* or household members, sexual or intimate partners or persons who *share biological parenthood*:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
> (2) Placing another in reasonable fear of imminent serious bodily injury.
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102 (emphasis added). The Act further defines "family or household members" as including those individuals related by consanguinity, i.e., related by blood. *Id.* Naturally included in this definition are siblings, even if they do not reside in the same house. *Custer v. Cochran*, 933 A.3d 1050, 1055 (Pa. Super. Ct. 2007). Plaintiff and Defendant in the instant case are sisters, related by consanguinity, but who do not live under the same roof. This Court finds

2

no argument or case law to support the contention that they are not protected individuals under the plain language of the Act.

### (3) Lack of Evidence to Support Plaintiff's Petition.

Defendant asserts that there is not sufficient evidence that Plaintiff reasonably believed she may have been subject to "immediate fear of bodily harm or death."

> When faced with a sufficiency challenge under the PFA Act, we review the evidence in the light most favorable to the petitioner and, granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. Furthermore, we must defer to the credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court.

*Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa. Super. Ct. 2007). The plaintiff in a PFA action must only prove by a preponderance of the evidence that one form of "abuse" occurred as defined in the Act. *Hood-O'Hara v. Wills*, 873 A.2d 757, 761 (Pa. Super. Ct. 2005). Although the sisters dispute the nature of the alleged actions by Defendant, it is evident that Plaintiff was reasonably in fear of imminent serious bodily injury. Testimony established a pattern of abusive and harassing actions by Defendant, directed toward Plaintiff. There were multiple incidents of online behavior by Defendant that were either of a harassing nature or intended to put Plaintiff in fear of injury. Specifically, Defendant posted comments on Facebook directed at Plaintiff indicating that she had obtained four handguns and a rifle. (Hearing Transcript, 10/16/13, at 79). Defendant also posted negative recommendations relating to police skills on Plaintiff's LinkedIn page for her dog training business, requiring Plaintiff to delete the account and lose the business contacts she had developed. (*Id.* at 82-83). Further testimony revealed that Defendant showed up where Plaintiff was on duty as a police officer and proceeded to pace and glare menacingly at Plaintiff with fists clenched in rage. (*Id.* at 80-82). During this incident, Plaintiff was on duty at

3

a stadium during a college football game where Defendant still managed to find her in a crowd of over 100,000 people. Plaintiff believed that the threat of an imminent attack was the only motivation for Defendant to have found her in such a large crowd. (*Id.*)

The incident that led to Plaintiff filing a PFA Petition was a physical altercation between the parties, which occurred at their father's funeral in Erie, PA. Plaintiff testified Defendant came into the funeral home and began swearing at her. Defendant then proceeded to "body slam" Plaintiff when Plaintiff attempted to place herself between Defendant and their father's casket. (*Id.* at 87). Plaintiff further testified she suffered panic attacks whenever the Defendant was around her. (*Id.* at 23). The Court found Plaintiff's testimony to be credible, and it was clear the parties should not be in the same place together given their history of violence. (Hearing Transcript, 12/16/13, at 67). Through her testimony, Plaintiff provided sufficient evidence to prove she was in fear of imminent bodily injury from Defendant.

### (4) Duration of Protection from Abuse Order and Persons Included.

#### A. Duration

Defendant argues that this Court erred when it granted relief until December 17, 2016 because this date exceeds the statutory limit of three (3) years for the duration of a protection from abuse order. Defendant contends that because a temporary PFA was granted by this Court on June 20, 2013, the duration of the final order should not exceed three years from that date. However, the law is well settled that the maximum duration of a PFA runs from the date of the final order, not from the date of an order issued in a prior temporary ex-parte proceeding. *Holderman v. Hagner*, 760 A.2d 1189, 1193. (Pa. Super. Ct. 2000). As such, the Court stands by our decision to grant relief until December 17, 2016.

4

B. Persons Included

Lastly, Defendant believes this Court erred when it included in the Order, as protected individuals, Plaintiff's two adult cousins because they do not qualify as protected persons under the statute. Defendant, however, ignores the distinction presented between Plaintiff as a "protected person" under the PFA, and the inclusion of Plaintiff's cousins, Cheryl Campbell and Holly Schwab, as lesser-included "designated persons" Defendant is prohibited from stalking or harassing. Section 6108(a)(9) of the Protection from Abuse Act allows a court to include in a PFA Order a direction to the defendant to "refrain from stalking or harassing the plaintiff and other designated persons as defined in 18 Pa.C.S. §§ 2709 (related to harassment) and 2709.1 (relating to stalking)." A "designated person" under §§2709 and 2709.1 is "family and household members," including those related by consanguinity. As the protected persons under this Court's December 17, 2013 Protection from Abuse Order are related to Plaintiff by blood, they are appropriately included in the Order. Furthermore, in order to trigger an indirect criminal contempt charge regarding Plaintiff, Defendant need only contact her to violate the PFA Order. Conversely, in order to violate the PFA Order regarding Plaintiff's cousins, Defendant must *also* violate the criminal statutes of either Stalking, 18 Pa.C.S.A. § 2709.1, or Harassment, 18 Pa.C.S.A. § 2709. The Court believes this distinction important, and the implications were thoughtfully considered by the Court when we rendered our decision.

For all these reasons, the Court respectfully maintains that its Final Protection from Abuse Order of December 17, 2013 was correctly entered, and should remain undisturbed. The Court hopes this Opinion aids the Honorable Superior Court in this matter.

BY THE COURT:

Date: March 4, 2014      Thomas King Kistler, Judge

5