J. A11001/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.A.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| J.F.D., JR., | : | No. 3211 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered October 21, 2014,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 2014-25438

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 4, 2015**

J.F.D., Jr. ("Father"), appeals from the order entered against him pursuant to a petition brought under the Protection From Abuse Act ("PFAA"), 23 Pa.C.S.A. § 6101 ***et seq.***, by M.A.D. ("Mother") on behalf of the parties' minor children.  We affirm.

We adopt the factual and procedural history of this case as summarized by the trial court:

> On September 9, 2014, Plaintiff, Mother, filed a petition for protection from abuse against Father on behalf of the parties' minor children, B.D. and P.D.  In said petition Mother avers that on September 5, 2014, her youngest daughter, P.D., told her that on the evening prior, Father was "very angry" with B.D. for running outside while naked and Father "threw B.D. to the floor and slapped B.D. across the face."  (Hereinafter "September 4, 2014 incident").  Mother also avers that B.D. told Mother the same story regarding the September 4, 2014

incident that was relayed to her by P.D. Additionally, Mother provided information regarding prior incidents of abuse. Mother avers that both children are scared of Father and don't wish to return to his apartment. On the same date, the Honorable Patricia E. Coonahan, issued an Order appointing a child advocate to the minor children, in addition to a temporary PFA Order on behalf of the children, which directed that Defendant "shall not abuse, harass, stalk, or threaten" the children and also directed Defendant to have "no contact" with the children. After two continuances, one of which was to allow the child advocate time to interview the children, a hearing on the final PFA was held before this Court on October 21, 2014.

During the hearing, this Court heard testimony from Mother, Father, and B.D. regarding the September 4, 2014 incident, as well as other prior incidents of abuse.

. . . .

At the conclusion of the hearing, this Court explained to both parties that it was impressed that B.D. was in fear of imminent serious bodily injury and entered a final PFA on behalf of the children[1] which directs that Father, for a period of one (1) year, "shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to Plaintiffs," and further directs Father to participate in an anger management program for a period of six (6) months, as well as, three (3) joint sessions with B.D. and B.D.'s therapist. Said Order did not prohibit Father from having contact with his children.

On November 5, 2014, Father filed a Motion for Reconsideration of the Final PFA Order, which this Court denied in an Order, dated November 13, 2014.

---

[1] The fact that the order covers both children and not just B.D. has not been challenged on appeal.

Trial court opinion, 12/15/14 at 1-2, 4-5 (references to footnotes omitted).

Father filed a timely notice of appeal on November 18, 2014. On November 24, 2014, the trial court entered an order directing Father to file his concise statement of errors complained of on appeal within 21 days. On December 9, 2014, Father timely complied.[2]

> I. Did the Trial Court commit an error of law by entering an Order which fails to properly consider the statutory definition of abuse set forth at 23 Pa. C.S. §6102(a)(2) in conjunction with the statutory definition of serious bodily injury set forth at 18 Pa. C.S. §2301 and incorporated into the Protection from Abuse Act pursuant to 23 Pa.C.S. §6102(b), prior to entering a Final Protection from Abuse Order against the Defendant?
>
> II. Did the Trial Court abuse its discretion by entering an Order that the child's testimony that the Defendant kicked a trashcan that the child was not near, slapped her, pushed her, shook her bunk bed and caused her to sustain a rug burn on her knee established by a preponderance of the evidence that the Defendant's actions placed the child in reasonable fear of imminent serious bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily

---

[2] This case is a Children's Fast Track appeal as defined by Pa.R.A.P. 102, which requires the concise statement of matters complained of on appeal to be contemporaneously filed with the notice of appeal. **See** Pa.R.A.P. 1925(a)(2) and 905(a)(2). Father failed to file his Rule 1925(b) concise statement with his notice of appeal; however, he did file a Rule 1925(b) statement in compliance with the trial court's subsequent order to do so. As no one objected to the late filing and there is no claim of prejudice, we proceed to review the merits. **See In re K.T.E.L.**, 983 A.2d 745, 748 (Pa.Super. 2009).

      member or organ which is statutorily necessary to enter a Final Protection from Abuse Order[?]

   III.  Did the Trial Court abuse its discretion in entering an Order finding that the child's testimony that she was afraid of the Defendant established by a preponderance of the evidence that the Defendant's actions placed the child in reasonable fear of imminent serious bodily injury, defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ which is statutorily necessary to enter a Final Protection from Abuse Order[?]

   IV.  Did the Trial Court abuse its discretion in entering a one-year Final Protection from Abuse Order based upon the limited, questionable testimony of the child regarding the actions of the Defendant which did not meet the statutory definition of abuse set forth at 23 Pa. C.S. §6102(a)(2) and 18 Pa. C.S. §2301[?]

   V.  Did the Trial Court abuse its discretion in denying the Defendant's Motion for Reconsideration which provided the court with a clear delineation of the applicable statutes and case law which justify a reversal of the court's October 21, 2014 Final Protection from Abuse Order[?]

Father's brief at 10-11.

Father's first four issues basically argue the evidence was insufficient to support the trial court's finding that B.D. was placed in reasonable fear of imminent serious bodily injury under Section 6102(a)(2) of the PFAA.

- 4 -

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Lanza v. Simconis***, 914 A.2d 902, 905 (Pa.Super. 2006). "When faced with a sufficiency challenge under the [PFAA], we review the evidence in the light most favorable to the petitioner and, granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." ***Custer v. Cochran***, 933 A.2d 1050, 1058 (Pa.Super. 2007) (***en banc***), citing ***Hood-O'Hara v. Wills***, 873 A.2d 757, 760 (Pa.Super. 2005). "[W]e must defer to the credibility determinations of the [PFA] court." ***Id.*** "The preponderance of evidence standard is defined as the greater weight of the evidence, ***i.e.***, to tip a scale slightly is the criteri[on] or requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa.Super. 2004) (internal citations and quotations omitted).

"The purpose of the [PFAA] Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Mescanti v. Mescanti***, 956 A.2d 1017, 1022 (Pa.Super. 2008). The PFAA defines "abuse," in relevant part, as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> . . . .

- 5 -

> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a).[3] "[T]he court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury. . . . [The] intent [of the alleged abuser] is of no moment." *Raker v. Raker*, 847 A.2d 720, 725 (Pa.Super. 2004).

Viewed in the light most favorable to Mother on behalf of the parties' minor children, the verdict winner, we agree with the trial court's determination that the evidence warrants a PFA order against Father. In his first argument, Father contends the slap does not constitute a reasonable fear of imminent serious bodily injury. (Father's brief at 23.) Father cites *Ferri v. Ferri*, *supra*, for the proposition that a slap would not constitute reasonable fear of imminent serious bodily injury.

The facts instantly are unlike those presented in *Ferri*. In *Ferri*, Mother was trying to get N.F., her six-year-old child, into her house when she inflicted a slap on N.F.'s face. N.F. did not cry or suffer a bruise from the slap. Father filed a protection from abuse petition against Mother that the trial court granted.

In reversing, this court explained there was no evidence presented that N.F. was in reasonable fear of imminent bodily injury. This court opined

---

[3] The other definitions of "abuse" in Section 6102(a) do not apply to this matter.

"in those cases where we have affirmed the entry of a PFA order, despite the fact that the victim did not experience an actual injury, the victim was in each case able to demonstrate a reasonable fear of imminent bodily injury, pursuant to 23 Pa.C.S.A. § 6102(a)(ii)." ***Id.*** at 604. We further determined that the record in ***Ferri*** was devoid of any evidence that N.F. was in reasonable fear of imminent bodily injury, nor did Father argue that N.F. was in fear. ***Id.***[4]

Instantly, according to eight-year-old B.D.'s testimony regarding the September 4, 2014 incident, Father yelled bad words, kicked the trash can, hit her across the face with an open hand, and pushed her. She fell to the ground and got a rug burn. Her Father yelled "go to bed" and "he shook the bed and said bad words." B.D. testified she thought she was going to fall out of the top bunk bed when her Father shook the bed. During the incident, she was crying and felt sad. (Notes of testimony, ***in camera*** interview, 10/21/14 at 10, 16.) Along with this testimony, B.D. told of other incidents that involved Father pushing her and Mother, and Father yelling. The trial court found B.D.'s testimony credible. ***See Smith v. Shaffer***, 515

---

[4] We note without further comment the ***Ferri*** court regarded the slap as a form of corporal punishment or parental discipline. The court explained: "We do not believe the General Assembly intended the [PFAA] to tie the hands of parents who may have to discipline their children appropriately. Indeed, the '[PFAA] does not outlaw corporal punishment by a parent.' This is so, presumably, because most parents understand that if corporal punishment is properly imposed, it will not produce bodily injury." ***Id.*** (internal citations omitted).

A.2d 527, 528 (Pa. 1986) (determination of credibility is solely for the trier of fact). Unlike **Ferri**, there was evidence presented to show that the eight-year-old child, B.D., was in reasonable fear of imminent serious bodily injury.

Father also cites **Mescanti v Mescanti, supra,** another protection from abuse case, in support of his position. In that case, husband and wife were separated but continued to reside in the same home. **Id.**, 956 A.2d at 1020. Wife testified regarding a pattern of harassment by husband that lasted for months. **Id.**, at 1021. On the day of the incident in question, the parties argued. Husband stated to wife, "[t]his is going to get ugly" and "[t]his is just the tip of the iceberg." **Id.** at 1020. Later in the evening, husband said to wife, "you better not go to sleep. You better not even close your eyes." **Id.** at 1021. Wife testified husband owned several guns that were located in the home, and that she heard the cocking of guns in the basement on previous occasions. **Id.** The trial court found that wife provided sufficient evidence to support a finding that Husband had engaged in a course of conduct that reasonably placed Wife in fear of bodily injury and thus constituted "abuse" under 23 Pa.C.S.A. § 6102(a)(5).[5] **Id.** at 1023.

---

[5] Section 6102(a)(5) provides, in relevant part: "Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury."

In affirming, this court explained, "Considered as a whole, Wife's testimony of Husband's indirect threats on the night [in question], when coupled with her testimony that on prior occasions he would cock his guns within her earshot, established "abuse" under Section 6102(a)(5) by a preponderance of the evidence." *Id.* at 1024.

In his brief, Father states, unlike *Mescanti,* there was no accusation by B.D. that he had weapons or had ever threatened her life; thus, there was no basis to conclude that she had a reasonable fear of imminent serious bodily injury. (Father's brief at 24.) We point out that the findings of "abuse" in the case *sub judice* and the *Mescanti* case were based on two different sections of the PFAA. *Mescanti* involved a pattern of conduct that ultimately led to an incident where husband implied he might shoot his wife. Wife reasonably feared bodily injury at the hands of husband. Instantly, during the September 4th incident, Father yelled bad words, kicked the trash can, hit B.D. across the face with an open hand, pushed her, shook her bed to the extent she believed she was going to fall out of it. Father's actions caused an eight-year-old child to be in fear of imminent serious bodily injury.

In his next argument, Father complains that B.D.'s testimony relating Father's actions on September 4, 2014, does not meet the standard necessary to support a finding that she could have a reasonable fear of imminent serious bodily injury as set out in the Crimes Code. (Father's brief

at 27.) Father relies on Section 6102(b) of the PFAA, which states, "[t]erms not defined in [the PFAA] shall have the meaning given to them in 18 Pa.C.S.A. (relating to crimes and offenses)." The definition of "serious bodily injury" is a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. **See** 18 Pa.C.S.A. § 2301.

Instantly, in Father's view, the incident was too minor to result in a reasonable fear of serious injury. Father testified that he was upset that his children had run outside naked, across a parking lot, so he directed B.D., "in a very stern way," to put on clothes. (Notes of testimony, 10/21/14 at 70.) He further testified that he "clapped his hands right in front of [B.D.'s] face and [he] grabbed her shoulder and shoved her," but grabbed her arm and held her up so her knee did not hit the floor. (**Id.** at 71.) Father testified that with the actions taken, he intended to "give [B.D.] an experience . . . the sensation of a car hitting her"; he was not trying to scare her. (**Id.**)

Father's explanation of his intent will not afford him any relief. In the context of a PFA case, the trial court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury, which is exactly the conclusion arrived at by the trial court here. B.D., was an eight-year-old child who testified at length regarding the fear she experienced during the September 4th incident. That testimony, in addition to the fear

she experienced during prior incidents as well as the ongoing fear she feels when her Father acts "mean," is a proper basis for the entry by the trial court of this precise PFA order which also directs Father to attend an anger management program and therapy sessions with B.D. *See Raker*, 847 A.2d at 726 (explaining that in light of the protective purposes of the PFA, it is not an abuse of discretion for the court to inquire into the history of the parties in order to determine the reasonableness of the petitioner's fear). Moreover, "[t]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." *Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 208-209 (Pa.Super. 2002).

In his final issue, Father argues the trial court abused its discretion when it denied his motion for reconsideration which provided the court with a clear delineation of the applicable statutes and case law which justify a reversal of the trial court's October 21, 2014 PFA order. Father then references the arguments he made in his Issues I through IV. We have already decided there was a legally sufficient and proper basis for the entry of a PFA order in this case. Accordingly, we do not need to say anything further.

Order affirmed.

J. A11001/15

Judgment Entered.

Joseph                    D.                    Seletyn,                    Esq.
Prothonotary

Date: 5/4/2015