J-S72009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.M.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.C.A. | : | No. 931 MDA 2018 |

Appeal from the Order Entered May 9, 2018
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): A-126-2018

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 19, 2019**

J.M.J. ("Plaintiff") appeals from the order that denied her request for a final protection from abuse ("PFA") order. We affirm.

On May, 1, 2018, Plaintiff obtained a temporary PFA order against S.C.A. ("Defendant"), with whom she had an intimate relationship and a child. The order was based upon abuse that allegedly occurred after Plaintiff appeared uninvited and unannounced at Defendant's home on the afternoon of April 30, 2018. As a result of the incident, Plaintiff sustained bruises to her face and a mark on her neck.

The trial court held a hearing on the petition on May 9, 2018, at which Plaintiff, Defendant, and Defendant's paramour ("Paramour") testified, offering contradictory versions of how Plaintiff's injuries occurred. According to Plaintiff, upon arriving at Defendant's home she knocked on the door, Defendant opened it, and she entered the home. Defendant immediately

became irate for no apparent reason, and physically attacked her, knocking her to the ground, striking her head on the floor, and attempting to strangle her. Plaintiff asserted that Defendant then tried to force her out of the residence despite her indication that she needed time to get her bearings, and that she left when she was able to do so.

Defendant testified that, on the afternoon in question, Paramour drove her car to his home and parked it in the garage underneath the apartment. While Paramour was in the basement, he went upstairs where Plaintiff forced her way into the apartment and tried to get around him to get to Paramour in the basement. Defendant indicated that Plaintiff had confrontations with Paramour in the past.[1] When Defendant attempted to stop Plaintiff from going downstairs to the basement, they both tumbled down the first flight. Plaintiff initially refused to leave despite Defendant's repeated requests that she do so, but she eventually left. Defendant denied having assaulted Plaintiff as she described, and indicated that this was not the first time she sought a PFA order based upon false accusations, with the prior petition having been denied after a hearing.

Paramour offered testimony that was consistent with Defendant's version of events. She indicated that, after returning to the basement upon

_____

[1] Plaintiff, who originally denied knowing Paramour or having written letters to her, was confronted during cross-examination with a letter she had written to Paramour in 2016.

- 2 -

retrieving something from her car, she heard a commotion upstairs. Paramour recognized Plaintiff's voice, and barricaded the basement door out of fear of Plaintiff, who has harassed Paramour for years. Paramour heard Defendant repeatedly tell Plaintiff to leave, but the sounds of the interaction instead moved closer to the door to the basement, followed by the sounds of things being knocked over in the stairwell. Shortly after the yelling stopped, Defendant opened the basement door, at which time Paramour saw signs of the struggle, including all of the items from the stairwell shelves being strewn on the stairs.

The trial court found neither Plaintiff nor Defendant offered wholly credible testimony, but accepted Paramour's testimony as true. Accordingly, it denied Plaintiff's petition at the conclusion of the hearing. Plaintiff filed a timely notice of appeal, and both Plaintiff and the trial court complied with Pa.R.A.P. 1925.

Plaintiff presents one question for this Court's review: "Did the trial court err and commit an abuse of discretion when it denied Plaintiff . . . a final [PFA] order as the testimony and law show that there was an act of violence against [Plaintiff] that caused bodily injury?" Plaintiff's brief at 4 (unnecessary capitalization omitted).

We consider Plaintiff's question mindful of the following principles.

> We review the propriety of a PFA order for an abuse of discretion or an error of law. We have described this standard as not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly

unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***E.A.M. v. A.M.D. III***, 173 A.3d 313, 316 (Pa.Super. 2017) (internal quotation marks and citations omitted). Further, "[t]his Court must defer to the trial court's determinations regarding the credibility of witnesses at the hearing." ***Ferko-Fox v. Fox***, 68 A.3d 917, 928 (Pa.Super. 2013).

The purpose of the PFA Act "is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Custer v. Cochran***, 933 A.2d 1050, 1054 (Pa.Super. 2007) (*en banc*). In order to obtain a PFA order, the petitioner must establish by the preponderance of the evidence that he or she suffered abuse. ***Hood-O'Hara v. Wills***, 873 A.2d 757, 761 (Pa.Super. 2005). Abuse is defined as the occurrence of one or more of the following between, *inter alia*, intimate partners: "(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury[ or] serious bodily injury . . . with or without a deadly weapon[;] (2) Placing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S. § 6102(a).[2]

The trial court found, based upon its credibility determinations, that the injuries Plaintiff sustained on April 30, 2018, were the result of a "mutual

---

[2] Other forms of abuse provided in the definition, but clearly inapplicable to the instant case, are the infliction of false imprisonment, physical or sexual abuse of children, and knowingly placing a person in reasonable fear of bodily injury through repeated acts or a course of conduct. 23 Pa.C.S. § 6102(a)(3)-(5).

struggle" rather than abuse as defined in the PFA Act. Trial Court Opinion, 7/9/18, at 8. The court explained its findings as follows:

> After hearing all of the evidence, we did not find the Plaintiff's testimony as to what occurred that day to be entirely credible. Likewise, we did not find the Defendant's testimony, which was inconsistent, to be entirely credible. We do believe, and all of the witnesses appeared to agree, that the Defendant was in a sexual relationship with two women, the Plaintiff and [Paramour]. We believe that the Plaintiff arrived at the Defendant's home that day and entered the home without having notified him in advance or asking his permission to do so. They then engaged in a mutual struggle during which the Plaintiff attempted to get to the basement of the Defendant's home and refused to leave, despite the Defendant's repeated orders to do so. This is based solely on the testimony of [Paramour], which we found to be entirely credible. She heard a struggle that lasted for many minutes, and took place from the main floor of the home and down the stairwells. She heard the Defendant asking repeatedly for the Plaintiff to leave, and the Plaintiff did not leave, and the struggle continued. [Paramour] was in fear of the Plaintiff from prior encounters and barricaded the basement door to protect herself. Finally, the struggle stopped, the Plaintiff left, and the Defendant appeared at the basement door. We find that as a result of a mutual struggle, the Plaintiff suffered injury.

*Id*. at 7-8.

Our review of the transcript of the hearing shows that the trial court's findings are supported by the record. Therefore, those findings, and the trial court's credibility determinations, are binding on this Court. *Ferko-Fox*, *supra* at 928. Accordingly, we must review Plaintiff's arguments upon acceptance of the testimony of Paramour, consistent testimony of Defendant, and rejection of Plaintiff's testimony to the extent that it is contradictory.

Plaintiff argues that the trial court erred in holding that Defendant's conduct did not amount to abuse under the Act. She points to the trial court's

opinion that "'[e]ven taking all of the Plaintiff's testimony as credible, it may be an assault, but it is not abuse.'" Plaintiff's brief at 12 (quoting Trial Court Opinion, 7/9/18, at 9). Plaintiff contends that, if Defendant had assaulted her as she described, slamming her head off of the floor and strangling her with an extension cord, it would constitute abuse under the statute. *Id*. She posits that, "[b]ased upon the trial court's opinion, [she] was responsible for whatever injuries she sustained because she entered [Defendant's] home and did not leave fast enough." *Id*.

We agree with Plaintiff that, if the trial court found her version of events to be credible, it would have constituted abuse under the statute. *See*, *e.g.*, *Coda v. Coda*, 666 A.2d 741, 743 (Pa.Super. 1995) (holding abuse was sufficiently established by wife's testimony, found credible by the trial court, that husband grabbed her by the hair, dragged her across the floor, and kicked her in the chest and back). The unsolicited appearance of the mother of his child, with whom he had an ongoing relationship, at Defendant's house would not have given him license to strike her head on the floor and strangle her simply because he wished her to leave. However, as the trial court expressly did **not** believe that events unfolded as Plaintiff testified, the trial court's opinion to the contrary was dicta. As such, the trial court's misinterpretation in that regard does not warrant reversal.

The trial court rejected Plaintiff's testimony that she knocked on Defendant's door, he opened it, and then he "grabbed [her] hair, and he threw

[her] down on the ground and started hitting [her'] head off the ground."
N.T., 5/9/18, at 5. Indeed, it expressly found that Plaintiff did not establish by a preponderance of the evidence that Defendant strangled her with an extension cord or that her injuries prevented her from leaving immediately. Trial Court Opinion, 7/9/18, at 9-10.

Rather, the trial court credited Paramour's testimony that, while she was hiding in the basement because she was afraid of Plaintiff, who "has harassed [Paramour] for years; and she's a lot bigger than" Paramour, she heard Defendant tell Plaintiff to leave, the two argued, they came closer to the stairs that lead from the kitchen to the basement, it sounded like the two of them "tumbled down the stairs," and, after Plaintiff left, there were visible signs of a struggle such as bottles and things from the stairwell shelves knocked onto the ground. N.T., 5/9/18, at 32-33.

Accepting this version of events as true, which the trial court did, it is clear that the trial court did not deny Plaintiff protection because it blamed her for entering Defendant's home and not leaving fast enough. Under these facts, we cannot conclude that the trial court abused its discretion in holding that Plaintiff failed to prove abuse. The evidence accepted by the trial court simply does not show that Defendant intentionally, knowingly, or recklessly sought to cause bodily injury to Plaintiff or to place her in fear of injury. Rather, Plaintiff was injured when Defendant reacted to her aggression toward Paramour, seeking not to injure Plaintiff or place her in fear of injury, but to

prevent Plaintiff from harming Paramour.  Applying our standard of review, *see E.A.M.*, *supra* at 316, no relief is due.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2019