J-S25030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KYLE PHILIP KNITTLE | : | |
| | : | |
| Appellant | : | No. 1604 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 29, 2018
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-MD-0000126-2018

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED JUNE 11, 2019**

Appellant, Kyle Phillip Knittle, appeals from the order granting the petition for a protection from abuse order (PFA) filed by his parents, Philip Knittle and Gretchen Knittle, and finding Appellant in indirect criminal contempt of a temporary PFA order. Additionally, Appellant's counsel, Hugh C. Taylor, III, Esquire (Counsel) seeks to withdraw from representation pursuant to **Anders v. California**, 38 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

On July 23, 2018, the court entered a temporary PFA order against Appellant, evicting him from his parents' house and directing that he not have further contact with them. The order was served on Appellant and he vacated the residence. However, prior to the hearing on whether a final order would

be entered, Appellant's parents returned to their home and found him in their basement.

On August 29, 2018, the court held a hearing at which Phillip Knittle, Gretchen Knittle, and Police Officer Elijah Middaugh testified for the Commonwealth. Appellant testified on his own behalf.

Appellant's parents testified that in the summer of 2018, Appellant, who suffered from several mental health issues, was living in their basement and assisting Mr. Knittle at his place of business. N.T., 8/29/18, at 4-5. Mr. and Mrs. Knittle began to have concerns about Appellant's increasingly paranoid behavior, and discovered he had not been compliant in taking his medication. *Id.* at 5. Based on Appellant's physical appearance and behavior, Mr. Knittle did not want him working at the family store. *Id.* at 6. In late June or early July, the Appellant and his father had a confrontation, and Mr. Knittle pushed Appellant in the chest and told him to leave the store. *Id.* at 6-7.

On July 9, 2018, Mr. Knittle received a call from his wife that Appellant had knocked a drink out of her hand, was slamming doors, flipping furniture, and throwing garbage cans. *Id.* at 8. Mrs. Knittle was "scared to death." *Id.* at 15. Upon arriving home, Mr. Knittle learned that Appellant had barricaded himself in his bedroom. *Id.* at 8-9, 15. Mr. Knittle was concerned for Appellant's safety as well as his own, and called the police. *Id.* at 9-10.

Appellant continued to act in an antagonistic manner toward the responding officers and accused his parents of "making it up" and hiring people to pretend to be police officers. *Id.* 9-10, 15. Officer Middaugh, a

responding officer, testified that the basement was in disarray and it appeared that Appellant was suffering from "a mental health incident." *Id.* at 16-17. Officer Middaugh contacted the Columbia Montour Snyder Union (CMSU) so that Appellant could talk to a crisis worker. *Id.* at 17. The crisis worker indicated that she would follow up with Appellant the next day. *Id.* at 17-18. The police then escorted Appellant from his parents' home.

The next day, Mr. and Mrs. Knittle discovered that Appellant had been hospitalized in a psychiatric ward after admitting that he had tried to harm himself. *Id.* at 10-11. Appellant was released four days later, and the Knittles obtained a temporary order excluding him from the residence. *Id.* at 11. Nevertheless, a week later, the Knittles discovered Appellant's car in their driveway, and Appellant sleeping on the basement couch. *Id.* at 11-12. They called the police and Officer Middaugh, again responding to the residence, found Appellant in the basement and took him into custody. *Id.* at 18-19. Appellant told Officer Middaugh that the basement was his apartment, and the "PFA was false." *Id.* at 19.

Testifying on his own behalf, Appellant claimed that his father had previously assaulted him at the family business. *Id.* at 20. Appellant admitted to throwing furniture around the basement. *Id.* at 21. Appellant denied threatening either of his parents, and stated that he had attempted to block them from entering the basement so that he could "cool off." *Id.* at 22. Appellant acknowledged that he was aware of the temporary order, but stated

that he returned to his parents' residence because he did not have anywhere else to go, and had run out of food and water. *Id.* at 22-23.

Following the hearing, the court entered a final PFA order, found Appellant in contempt of the temporary PFA order, and sentenced him to six months of incarceration. This timely appeal followed. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.[1] On March 20, 2019, Counsel filed an *Anders* brief and accompanying petition to withdraw as counsel, in which he argues that Appellant's appeal is frivolous and requests permission from this Court to withdraw as counsel.

When faced with a purported *Anders* brief, this Court may not review the merits of underlying issues without first examining counsel's request to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under *Anders*, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

---

[1] Counsel filed notice of his intention to file an *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4).

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

> Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

***Commonwealth v. Orellana***, 86 A.3d 877, 879-880 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of ***Anders*** and ***Santiago***, only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Upon review, we have determined that Counsel's ***Anders*** brief complies with the above requirements. Counsel includes a summary of the relevant factual and procedural history; he refers to the portions of the record and relevant authority that could arguably support Appellant's claim; and he sets forth his conclusion that the appeal is frivolous and no other issues could be raised. Additionally, Counsel has supplied Appellant with a copy of the ***Anders*** brief and a letter explaining the rights enumerated in ***Nischan***, *supra*. Thus, counsel has complied with the technical requirements for withdrawal, and we therefore proceed to independently review the record to determine if the

issues raised are frivolous, and to ascertain whether there are non-frivolous issues Appellant may pursue on appeal.

Counsel's **Anders** brief does not contain a statement of issues he intends to raise on appeal. However, Appellant's argument summary raises two issues which we summarize:

> 1. Appellant contends his conduct did not justify the entry of a final Order granting his parents protection from the Act and excluding him from the residence which is, essentially, an argument regarding the sufficiency of the evidence to support a final order;
>
> 2. In the alternative, Appellant's return to "his apartment" within his parents' residence did not constitute a violation of the temporary Order and, accordingly, does not support a conviction for indirect criminal contempt.

**Anders** Brief at 5. Counsel concludes that Appellant's issues are without merit. **Id.**

The Protection from Abuse Act is designed "to bring about a cessation of abuse of the plaintiff." 23 Pa.C.S.A. § 6108. It defines "abuse" as "(i) intentionally, knowingly, or recklessly causing bodily injury; [or] (ii) placing another in reasonable fear of imminent bodily injury." 23 Pa.C.S.A. § 6102. The trial court has discretion in choosing between remedies afforded by the Act. **See Commonwealth v. Snell**, 737 A.2d 1232, 1235 (Pa. Super. 1999). In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. **Hood-O'Hara v. Wills**, 873 A.2d 757, 759 (Pa. Super. 2005). When a claim is presented that the evidence is not sufficient to support a PFA order:

we review the evidence in the light most favorable to the petitioner, and granting [petitioner] the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

*Ferri v. Ferri*, 854 A.2d 600, 602 (Pa. Super. 2004). We "defer[] to the credibility determinations of the trial court as to witnesses who appeared before it." *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

Additionally, for the trial court to find a defendant guilty of criminal contempt, four elements are necessary:

1. The court's order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

2. The contemnor must have had notice of the specific order or decree;

3. The act constituting the violation must have been volitional; and

4. The contemnor must have acted with wrongful intent.

*Shaner v. Harriman*, 189 A.3d 1088, 1090 (Pa. Super. 2018) (citing *Commonwealth v. Felder*, 176 A.3d 331, 334 (Pa. Super. 2017)). With regard to wrongful intent, that element "can be imputed by virtue of the substantial certainty that [a course of conduct would be] in violation of the PFA Order." *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007).

Instantly, the evidence was sufficient to support the entry of a final order. The purpose of the statute is to bring a cessation of abuse, the

definition of which includes "placing another in reasonable fear of imminent bodily injury." **See** 23 Pa.C.S.A. § 6102-6108. The trial court in this case concluded that Mrs. Knittle was placed in reasonable fear of imminent bodily injury. Mrs. Knittle testified that Appellant's actions, which included throwing furniture and knocking items from her hands, "scared her to death." N.T., 8/29/18, at 15. Additionally, both Mr. and Mrs. Knittle remained in fear of Appellant, as shown by their actions in calling police after discovering that Appellant had returned to their home.

Furthermore, the evidence was sufficient to find Appellant guilty of indirect criminal contempt. The temporary PFA order was clear regarding the persons to whom it was addressed and the conduct prohibited: Appellant was evicted and excluded from his parents' residence and prohibited from any contact with them. Appellant acknowledged that he had received the order. However, in his testimony, he articulated his belief that because the basement was "his apartment" and because he did not have anything to eat, he did not wrongfully enter his parents' home. **Id.** at 19. This Court has held that wrongful intent "can be imputed by virtue of the substantial certainty that [a course of conduct would be] in violation of the PFA Order." **Brumbaugh**, 932 A.2d at 111. Appellant was aware of the entry of the Order against him which stated that he was not allowed to enter the home or have any contact with his parents. Despite this awareness, Appellant entered the home. Accordingly, the evidence was sufficient to support the trial court's findings.

For these reasons, we conclude that the trial court did not err in entering a final PFA order and determining that Appellant was guilty of indirect criminal contempt. Finally, our independent review of the proceedings reveals no other non-frivolous issues that Appellant could raise on appeal. *See Flowers*, 113 A.3d at 1250. Thus, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/11/2019