J-A15036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHELE JEWETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN R. RODGERS | : | No. 1429 WDA 2021 |

Appeal from the Order Entered November 22, 2021
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2021-2615

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: July 20, 2023**

Michele Jewett ("Jewett") appeals from the order denying her petition for a final order pursuant to the Protection From Abuse ("PFA") Act.[1] We affirm.

We summarize the relevant factual and procedural history of this case as follows: John R. Rodgers ("Rodgers"), a married insurance agent, began an affair with Jewett in May 2020. *See* N.T., 11/22/21, at 43. The affair lasted for nearly a year, terminating in March 2021. *Id*. Rodgers and Jewett would communicate daily by text and speak once or twice a week on the phone. *Id*. They saw each other in person once or twice a week. *Id*. The relationship was sexual, and the two would have intercourse in Rodgers's office, and, sometimes, at Jewett's house. *Id*. at 7-8.

---

[1] *See* 23 Pa.C.S.A. §§ 6101 - 6122.

The relationship deteriorated when Jewett realized Rodgers had no intention of leaving his wife (hereinafter "Wife"), and the affair ended after what Rodgers described as a "heated exchange back and forth about the status of the relationship and how it was moving." *Id*. at 59. Jewett testified that she left Rodgers when it became clear he did not intend to leave Wife. *Id*. at 10. Rodgers testified that Jewett was angry at him and that she told him she would get back at him by telling Wife and sending her "the information that she had." *Id*. at 59-60. Jewett, at one point, told Rodgers, "You need to fess up to [Wife] and . . . take your beating. We will both leave you." *Id*. at 74. After the breakup, Rodgers learned that Jewett had taken a still photo of her and Rodgers—from her home surveillance system—and posted it to Facebook in the form of a "banner picture." *Id*. at 64-65.

On March 14 and 15, 2021, after the affair concluded, Wife received messages via her work e-mail account about the affair, purportedly from someone named "Amanda Gill," using the address "germantown979@yahoo.com." *Id*. at 24-26. The March e-mails referenced specific conversations Rodgers had with Jewett, including a specific instance of Rodgers advising Jewett that Wife stopped by Rodgers's office unannounced, and that Jewett should not come over. *Id*. at 77. The e-mails also referenced another conversation Jewett and Rodgers had about Wife in which Rodgers told Jewett he had told Wife to "go find your happiness." *Id*. at 76. Wife blocked the "germantown979" address. *Id*. at 29.

Subsequently, on September 15, 2021, Wife received approximately thirty-four e-mails from Amanda Gill containing screenshots of text messages between Rodgers and Jewett. *Id*. at 29, 66.[2] The outgoing address of these emails was "germantown999@yahoo.com," though the messages had been forwarded to "germantown999" from "germantown979." *Id*. at 29.[3] Those e-mails had attachments of screenshots of text messages Rodgers received from Jewett following their breakup. *Id*. at 65, 68, 70. In those text messages—which Jewett admitted she originally sent to Rodgers—Jewett expressed anger at Rodgers for "play[ing]" her. *Id*. at 68, 70. The allegations in the e-mails matched the allegations in the text messages, including that Jewett had not wanted a relationship with Rodgers, and sought to "run" or "cut him off," but he had "pursued" or "chased" her, and the e-mails and text messages accused Rodgers of speaking "bullshit." *Id*. at 70-72. Jewett also sent Rodgers messages exhorting him to "fess up to [Wife] and take your beating." *Id*. at 74.

In September 2021, within days of Wife receiving e-mails containing text messages between Rodgers and Jewett, Rodgers received messages from a phone number ending in -3308 taunting him about whether he would get a

---

[2] Wife's testimony is unclear about which, if any, of these September e-mails were directed to her personal e-mail address.

[3] Wife also received a text message on September 16, 2021, and an e-mail on September 21, 2021, both from Amanda Gill, the subject of which was Rodgers's affair with Jewett. *Id*.

divorce and telling him he would never admit to the affair because he was "more concerned with [his] reputation," among other things. *See id*. at 58-59. Wife likewise received messages earlier that month from the same -3308 number about her marriage. *Id*. at 27, 28.

The Rodgerses' daughter, M.R., worked at a Quaker Steak & Lube, located over an hour from her parents' residence. N.T., 11/22/21, at 103, 107. In October 2021, Jewett approached M.R. in person in the bathroom of the restaurant and told her about the affair. *Id*. at 103. According to M.R., Jewett did not threaten her or Rodgers at that time. *Id*. at 106.

Rodgers testified that he was afraid of Jewett, specifically,

I have no idea what she is capable of doing. She's reaching out to my family and friends. She . . . has driven out of the way to confront my daughter. These are things that have all escalated since the dumping [of e-mails on Wife in] September. I truly do believe that she's capable of doing more than this, and I don't want to not be ready.

*Id*. at 80.[4]

_____

[4] Wife, when asked what in the messages she found threatening toward Rodgers, explained, "I find the behavior erratically dangerous by confronting both myself and my family, and stalking us, and following us around on Facebook and other venues, finding out my e-mail, finding out my work e-mail, finding out my cell phone number, all of these things are extremely frightening." N.T., 11/22/21, at 41. Wife also became frightened because— in addition to the communications she had personally received—Jewett had personally sought out her and Rodgers's daughter to tell each of them about the affair. *Id*.

Jewett, for her part, testified that on September 8, 2021, she had been driving to participate in a 5K run when Rodgers began "aggressively following [her] . . . tailgating [her, to the extent that she had] to drive aggressively to get away from him. He was tailgating [her], weaving in traffic and trying to keep up with [her]." *Id*. at 10-11.[5]

Jewett and Rodgers cross-petitioned for PFA orders. The trial court granted a temporary PFA order for Rodgers but denied Jewett's request. Following a hearing on the cross-petitions, the trial court denied Jewett's petition for a final PFA order and granted Rodgers's petition for a final PFA order. *See* N.T., 11/21/22, at 140-41. Jewett timely appealed both the denial of her petition and the granting of Rodgers's petition. The case *sub judice* concerns Jewett's appeal from the order denying of her petition for a final PFA order.[6] Both Jewett and the trial court complied with Pa.R.A.P. 1925.

Jewett raises the following issues for our review:

1. The court erred by not determining that [Jewett] was in reasonable fear of imminent bodily harm.

2. The court erred by deeming [Rodgers] credible.

---

[5] We note that Jewett alleged in her PFA petition that Rodgers had on "several occasions . . . drugged [her] against her will in order to sexually abuse her, including physically restraining her." Jewett's PFA Petition, 10/14/21, at ¶ 8. Our review of the record reveals that she did not testify to such at the PFA hearing. Rodgers denied these allegations on cross-examination. *See* N.T., 11/22/21, at 79.

[6] We separately address Jewett's appeal from the order granting Rodgers's petition for a final PFA order at *Rodgers v. Jewett*, No. 1428 WDA 2021.

3. The court erred by failing to consider [Rodgers's] prior actions as [they] relate to [Jewett's] reasonable fear of harm.

4. The court erred/abused its discretion by admitting unauthenticated text message and e[-]mail evidence.

5. The court erred by admitting irrelevant testimony regarding [Jewett's] phone records.

6. The court erred by admitting hearsay evidence related to information regarding [Jewett's] alleged prior criminal charges.

7. The court erred by using the denial of a final PFA order in this matter as punishment for [Jewett's] actions in the cross-PFA matter which were unsubstantiated.

Jewett's Brief at 1 (unnecessary capitalization omitted; issues re-ordered for ease of disposition).[7]

Our standard of review for an order denying PFA relief is as follows:

> [T]his Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will. . . . Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court.

_____

[7] We note with disapproval that Jewett's statement of questions involved lists nine issues—with issues one and six being duplicates, and issues two and seven being duplicates. Accordingly, the nine issues raised in the statement of questions involved do not match the seven issues discussed in her argument section. **Compare** Jewett's Brief at 1 with *id*. at 8-9; *cf*. Pa.R.A.P. 2116(a), 2119(a). We address the issues that Jewett both included in her statement of questions involved and addressed in the argument section of her brief.

*Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (internal citations and quotations omitted). A PFA petitioner must establish that abuse occurred by a preponderance of the evidence, which this Court has defined as "the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (internal citations and quotations omitted, brackets in original).[8]

In her first three issues, Jewett argues the trial court abused its discretion by finding her incredible, finding Rodgers credible, and giving insufficient weight to her testimony about Rodgers's prior actions. We address

---

[8] The PFA act defines "abuse" as:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S.[A.] § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children . . ..

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury . . ..

23 Pa.C.S.A. § 6102(a)(1)–(5).

these issues together, as "the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." **C.H.L. v. W.D.L.**, 214 A.3d 1272, 1276 (Pa. Super. 2019) (internal citation omitted). Further, as noted above, our standard of review is abuse of discretion. **See Kaur**, 259 A.3d at 509. Moreover, "on appeal, this Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it. It is well-settled that the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Id**.

In her first issue, Jewett argues the trial court erred in denying her petition because she credibly testified to Rodgers "restricting her movement, drugging her, aggressively tailgating her and harassing her through the legal process…." Jewett's Brief at 14. In her second issue, Jewett again asserts that the trial court erred in finding her testimony incredible and Rodgers's credible given that Rodgers had acted deceptively in the past by hiding his affair with Jewett from his family. **See id**. at 30-31. In her third issue, Jewett argues the trial court erred in not placing "more weight" on her credible testimony that Rodgers had plied her with alcohol prior to their "romantic and

sexual encounters," and at least once physically forced her to engage in sexual relations. *Id*. at 16-17.[9]

The trial court considered these issues and concluded they were meritless. The court explained:

> [T]his [c]ourt found [Jewett] to be incredible. [She] alleges [Rodgers] followed her in a car and at another time, approximately a year earlier, drugged and physically assaulted [her]. However, [Jewett] continued to see [him] after the alleged drugging and sexual abuse incident and continued to showcase images of [the two of them] together on her social media profile and to engage [Rodgers's] family in harassment (even according to [Jewett's] own testimony) after all alleged incidents, undercutting [Jewett's] truthfulness and/or [her] actual fear.

Trial Court Opinion, 1/26/22, at 16-17. Moreover, as for Rodgers, the court determined that his "demeanor and candor as well as testimony . . . suggested substantial credibility." *Id*. at 17.

Following our review, we conclude that the trial court committed no abuse of discretion. The evidence in the light most favorable to Rodgers, with all reasonable inferences therefrom, established that Jewett pursued and harassed Rodgers and his family following the end of their affair, which militated against Jewett's allegation that she was abused by, and feared,

---

[9] Apart from Rodgers's denial on cross-examination that he drugged, non-consensually restrained, or sexually abused Jewett, we discern no testimony by Jewett about these matters. *See* N.T., 11/22/21, at 79. We observe that Jewett fails to pinpoint where in the record there is evidence supporting these assertions. *See* Jewett's Brief at 16-17; *Cf*. Pa.R.A.P. 2119(c).

Rodgers. **See** Trial Court Opinion, 1/26/22, at 16-17.[10] Moreover, the trial court, sitting as fact-finder, was entitled to assess Rodgers's credibility based on the substance of his testimony as well as his demeanor and candor, and to reject Jewett's testimony as incredible. **See Kaur**, 259 A.3d at 509. Accordingly, Jewett's first three issues merit no relief.

In her fourth issue, Jewett argues the trial court abused its discretion in admitting unauthenticated text and e-mail messages. We review a trial court's evidentiary rulings under an abuse of discretion standard. **Commonwealth v. Orr**, 255 A.3d 589, 594 (Pa. Super. 2021), *appeal denied*, 266 A.3d 2 (Pa. 2021). Regarding authentication, this Court has recognized:

> Pennsylvania Rule of Evidence 901 requires authentication prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). Pa.R.E. 901(b)(4) (item's appearance, contents, substance, internal patterns, or other distinctive characteristics, taken together with all the circumstances).

**Orr**, 255 A.3d at 595.

---

[10] We also observe that the trial court found Jewett's testimony about her friend "Amanda Gill" to be suspect based on her evasive answers and consequently doubted that the person existed, given Jewett's refusal to answer any questions in court about Gill. Trial Court Opinion, 1/26/22, at 15 n.27.

Jewett does not contest the accuracy of the messages or that Wife received them. *See, e.g.*, Jewett's Brief at 18 n.2. Instead, she argues that Rodgers failed to identify her as the sender. *Id*.[11] Jewett cites Pa.R.E. 901(a) which provides that, to authenticate evidence, its proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

We observe, initially, that Jewett did not object or challenge the admission of Exhibit 8, which contained the September 2021 e-mails from "Amanda Gill" to Wife, and which included attachments of screenshots of text messages between Jewett and Rodgers. *See* N.T., 11/22/21, at 66 (wherein Rodgers moved for admission of "all of the e-mails that were dumped on [Wife]" in September 2021, with attached text messages between Rodgers and Jewett; and Jewett stated, "No objection, Your Honor"). Thus, Jewett has waived her challenge to the September e-mails and attached text messages at issue. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

---

[11] We note, again with disapproval, that Jewett fails to identify which specific exhibits she purports to challenge on appeal, nor does she explain which specific messages she contests. *See* Jewett's Brief at 18-24. We therefore address her generalized assertion that the trial court erred in admitting "a series of emails sent to [Wife] and three text messages sent to [Rodgers and Wife] . . .." *Id*. at 19.

- 11 -

We next address the remaining communications. Following our review, we conclude the trial court did not abuse its discretion in admitting the other e-mails and text messages, namely, the March 2021 e-mails to Wife and the text messages from the phone number ending in -3308.[12] As we noted above, electronic communications may be authenticated by circumstantial evidence. *See Orr*, 255 A.3d at 595. The circumstantial evidence authenticating the March 2021 e-mails and the -3308 text messages is as follows: All the communications at issue concerned Jewett's affair with Rodgers. The e-mails to Wife first began around the time Jewett's and Rodgers's affair concluded in March 2021. *See* N.T., 11/22/21, at 24-25. The March 2021 e-mails referenced specific conversations between Rodgers and Jewett, including a conversation about one instance of Wife stopping by unannounced at Rodgers's office. *Id*. at 77. The e-mails also followed Jewett's threat to Rodgers to "tell [Wife] and send her the information that she had." *Id*. at 59-60. Furthermore, as discussed *supra*, Wife received e-mails in September 2021—whose admission was uncontested—originating from the same e-mail address as the March 2021 e-mails (though the September 2021 e-mails were

---

[12] The trial court's explanation for its ruling focused on the "best evidence rule," rather than authentication. *See* Trial Court Opinion, 1/26/22, at 13-14 (discussing Pa.R.E. 1001). However, we may affirm on any basis appearing of record. *See Clark v. Peugh*, 257 A.3d 1260, 1271 n.8 (Pa. Super. 2021), *appeal denied*, 268 A.3d 1079 (Pa. 2021) ("We may affirm the trial court's decision . . . on any basis that is supported by the record") (internal citation omitted).

forwarded to another similar address before Wife received them). *Id*. at 29, 60. Attached to those e-mails were screenshots of text messages Rodgers received from Jewett following his breakup with her. *Id*. at 65, 68, 70. In those text messages—which Jewett admitted she originally sent to Rodgers[13]—Jewett expressed anger at Rodgers for "play[ing]" her. *Id*. at 70. The allegations in the e-mails matched the allegations in the text messages, including claims that Rodgers had "pursued" or "chased" Jewett, and that Rodgers spoke "bullshit." *Id*. at 70-72. Jewett also sent Rodgers messages exhorting him to "fess up to [Wife] and take your beating." *Id*. at 74. We reiterate that the September e-mail address ("germantown999") received forwarded messages from the March e-mail address ("germantown979"). In early September 2021, prior to Wife's receipt of the e-mails, she received a text message about her marriage from the phone number ending in -3308. *See id*. at 28. Days after Wife received the e-mails with text messages between Jewett and Rodgers, Rodgers received a text message from the same number ending in -3308 taunting him and asking him how his divorce was going. *See id*. at 54, 58-59. Given the voluminous circumstantial evidence establishing Jewett's authorship of the March 2021 e-mails and -3308 text

---

[13] *See* N.T., 11/22/21, at 68 (stipulation by Jewett that the text messages attached to the September 2021 e-mails were text messages between her and Rodgers).

messages, the trial court did not abuse its discretion in admitting them.[14]

Therefore, Jewett's fourth issue warrants no relief.

In her fifth issue, Jewett contends the trial court erred in admitting Rodgers's phone records into evidence. As noted above, the standard of review for a trial court's evidentiary rulings is abuse of discretion. **See Orr**, 255 A.3d at 594. Evidence is relevant "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Smith v. Morrison**, 47 A.3d 131, 137 (Pa. Super. 2012); **see also** Pa.R.E. 401 (defining "relevant" evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action"). Further, given "the protective purposes of the act, it [is] within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the

---

[14] Jewett also cites this Court's non-precedential decision **M.H.W. v. C.J.O.**, 159 A.3d 995 (Pa. Super. 2016) (unpublished memorandum). **See** Jewett's Brief at 19-23. Citation to this Court's non-precedential memoranda, filed prior to May 2, 2019, is prohibited. **See** 210 Pa. Code § 65.37(B). Jewett additionally cites **Hood-O'Hara v. Wills**, 873 A.2d 757, 760 (Pa. Super. 2005) in support of her authentication argument. **See** Jewett's Brief at 21, 23. **Hood-O'Hara** is inapt, however, because in that case, this Court affirmed the trial court's exclusion of an e-mail on hearsay grounds. **See Hood-O'Hara**, 873 A.2d at 760. To the extent this Court in **Hood-O'Hara** also affirmed the trial court's ruling based on the e-mail's lack of authentication, we did not consider circumstantial evidence of authentication.

[petitioner's] entitlement to and need for a [PFA] order." ***Miller on Behalf of Walker v. Walker***, 665 A.2d 1252, 1259 (Pa. Super. 1995).

Jewett argues the trial court abused its discretion in admitting a zip drive of Rodgers's phone records because, she alleges, the records are not relevant, given "no tie was made by [Rodgers] between [Jewett] and these messages or this phone number." Jewett's Brief at 25.

The trial court determined Jewett's argument merits no relief. It explained that the records were relevant as they related to messages Rodgers received that contained "specialized knowledge and images which could only have come from [Jewett]," used to "harass and stalk" Rodgers; and they are evidence of the "reasonableness of [Rodgers's] fear as well as the non-existence and unreasonableness of [Jewett's] fear." Trial Court Opinion, 1/26/22, at 15.

Based on our review, the trial court did not abuse its discretion in concluding Rodgers's phone records were relevant. As we concluded above, the circumstantial evidence established Jewett as the author of the -3308 text messages. In addition to Rodgers's testimony about when he received the messages from the number ending in -3308, his phone records served to further corroborate the dates on which he received the taunting messages from Jewett. ***See*** N.T., 11/22/21, at 47 (counsel for Rodgers giving an offer of proof for Rodgers's phone records). As the trial court explained, these messages were relevant in that they made it less probable that Jewett feared

- 15 -

Rodgers and supported the reasonable inference that Jewett instead sought to antagonize Rodgers. Accordingly, we conclude the trial court did not abuse its discretion in determining that Rodgers's phone records were relevant.

In her sixth issue, Jewett maintains the trial court erred in admitting hearsay evidence of her prior criminal conduct. Specifically, Jewett argues the trial court erred in admitting "hearsay evidence related to information regarding [her] alleged prior criminal charges." Jewett's Brief at 26. She specifically objects to Wife's testimony that she feared Jewett "due to her prior criminal charges [which] is based on hearsay and should not be considered." *Id*. at 27.

Before reaching the merits of this issue, we must discern whether Jewett has preserved it for our review. A party is required to make a timely and specific objection to a trial court's evidentiary ruling in order to preserve the issue for appellate review. *See Hassel v. Franzi,* 207 A.3d 939, 948-51 (Pa. Super. 2019). A failure to specify the basis for the objection waives that argument on appeal. *See id*. at 951 (this Court concluding that, where the appellant objected to testimonial evidence on one basis, but failed to specify a second basis, the second argument was waived on appeal). Our review of the record reveals that Wife explained that she was afraid of Jewett, in part, because Jewett "pointed a loaded gun at her ex-husband and was arrested for terroristic threats and aggravated assault." N.T., 11/22/21, at 40. Jewett's objection consisted solely of: "Objection, Your Honor." *Id*. Jewett failed to

make a timely and ***specific*** hearsay objection to Wife's testimony and has accordingly failed to preserve this issue for appellate review. ***See Hassel,*** 207 A.3d at 951; ***see also*** Pa.R.A.P. 302(a).

However, even if preserved, Jewett's issue warrants no relief. Assuming, without deciding, it was error for the trial court to hear this testimony, we conclude any error was harmless. This Court has defined "harmless error" as "an error that does not affect the verdict." ***Knowles v. Levan***, 15 A.3d 504, 508 n.4 (Pa. Super. 2011) (internal citation omitted). Here, we observe that, following Wife's testimony at issue, the trial court informed her that her response "wasn't responsive to my question [of what Jewett did to threaten Rodgers]." N.T., 11/22/21, at 41. The court then redirected Wife to the question of what Jewett had written in her texts and e-mails that was threatening toward Rodgers. ***See id***. The trial court later elaborated that it did not consider Wife's statement. ***See*** Trial Court Opinion, 1/26/22, at 16. As the trial court did not rely on Wife's testimony in deciding Jewett's petition, any error is harmless. Jewett is therefore due no relief.

In her seventh issue, Jewett argues the trial court erred in denying her PFA petition because it did so on the basis of her alleged conduct underlying Rodgers's cross-PFA petition. ***See*** Jewett's Brief at 28.

We must initially determine whether Jewett has developed her argument sufficiently to preserve her issue for appeal. Pennsylvania Rules of Appellate Procedure 2119(a) and (c) require citations to pertinent authority and the

- 17 -

relevant parts of the record. Failure to cite pertinent legal authority, or to cite appropriately to the record, can result in waiver. *See Norman for Est. of Shearlds v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1119 (Pa. Super. 2019) (finding waiver of an undeveloped argument that lacks citation to pertinent legal authority); *see also R.L.P. v. R.F.M.*, 110 A.3d 201, 208–09 (Pa. Super. 2015) (stating that "[a]rguments not appropriately developed include those where the party has failed to cite any authority in support of a contention"); *Sephakis v. Pennsylvania State Police Bureau of Records & Identification*, 214 A.3d 680, 687 (Pa. Super. 2019) (finding waiver of an undeveloped issue lacking citations to the record and legal authority which thereby precluded meaningful appellate review). Following our review, we observe that the section of Jewett's brief pertaining to this issue is approximately one and a half pages long and is devoid of citations to pertinent parts of the record or any supporting authority. *See* Jewett's Brief at 28-30. Because Jewett's treatment of this issue is undeveloped, which impedes meaningful appellate review, we find this issue waived. *See Norman for Est. of Shearlds*, 208 A.3d at 1119; *see also R.L.P.*, 110 A.3d at 208–09; *Sephakis*, 214 A.3d at 687; Pa.R.A.P. 2119(a), (c).

As none of Jewett's preserved issues are meritorious, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/20/2023